# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| FRANKLYN TARVER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-1040 |
| | § | |
| SERVICE EMPLOYEES | § | |
| INTERNATIONAL, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Petitioner Franklyn Tarver seeks review of a decision from the Department of Labor's Benefits Review Board, which denied his application for benefits.  Tarver has filed a brief in support of his petition [Doc. # 41] ("Petitioner's Brief"), and Defendants have responded [Doc. # 43] ("Defendants' Brief").  Tarver filed a reply [Doc. # 46] and Defendants filed a surreply [Doc. # 50].  The petition is ripe for decision.  Having considered the parties' briefing, the administrative record, the applicable legal authorities, and all matters of record, the Court concludes that the petition should be **denied** and the decision of the Benefits Review Board should be **affirmed**.

## I.  BACKGROUND

Petitioner Franklyn Tarver appears *pro se* before this Court, although he was represented by counsel in earlier administrative proceedings.  Tarver seeks review of the decision of the Department of Labor's Benefits Review Board ("BRB"), which affirmed a decision of an Administrative Law Judge ("ALJ") denying Tarver's claim for benefits under the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, as extended by the Defense Base Act, 42 U.S.C. § 1651.  Tarver claimed that he was entitled to benefits because he was disabled due to a right knee injury, hypertension, hepatitis C, and depression and stress, and that all of these conditions were attributable to his employment.

In this opinion the administrative record is cited as follows: Claimant Tarver's Exhibits: CX-___; Employer/Carrier's Exhibits: EX-___; Hearing Transcript of June 6, 2007: Tr. ___.

### A.  Factual Background

From January 2005 until February 2006, Tarver worked as a bus driver in Kuwait and Iraq.[1]  Tarver states that, at the time of his hire, he had no medical

---

[1]  Tarver states multiple times that Kellogg Brown & Root ("KBR") was his employer.  *See*, *e.g.*, Petitioner's Brief, at 3.  However, the evidence supports Defendant's position that Service Employees International, Inc. ("SEII") was Tarver's employer.  *See* Employment Agreement (CX-4) (agreement between Tarver and Service
(continued...)

problems, pointing to the records from his pre-deployment physical examination.[2]  At the physical, however, Tarver had high blood pressure.[3]  The records show that he was negative for hepatitis A, but was not screened for hepatitis C.[4]

Tarver states that, on two occasions, he came into contact with blood on the bus he was driving during his employment.[5]  First, Tarver testified that, in February or March 2005, he transported soldiers to an airplane.  After the soldiers departed the bus, he was checking the bus and touched blood on one of the armrests.  He was unsure how much blood was on the armrest.  He testified that it was "possible" that he had cuts on his hand that had touched the blood.[6]  Second, Tarver stated that in about October 2005, he touched human blood on the steering wheel, console, and hand brake of the bus, which he presumed had been left by the driver working just

---

[1]     (...continued)
        Employees International, Inc.).

[2]     Pre-Deployment Physical (CX-3).

[3]     *Id*. at 6 (blood pressure reading of 164/90).

[4]     *Id*. at 9.

[5]     Petitioner's Brief, at 4.

[6]     Tr. 19-21.

before him.[7]  Tarver did not report either of the alleged exposures on the bus to SEII.[8]

Tarver alleges two other exposures to human blood during his employment, both of which he states occurred in his living quarters, which he shared with other employees.  First, in August 2005, he returned to his quarters after his work shift and discovered blood on his patio door handle, as well as "what looked like someone had sex in my bed."[9]  He states that he asked to be tested for a sexually transmitted disease ("STD") because he feared that, by rubbing his eyes when he discovered the residue from an alleged sex act, he had infected himself with an STD, but that the test results were negative.[10]

Tarver further alleges that, on October 15, 2005, he returned from work and found blood in his bed.[11]   He states that, afterwards, he was "angry, stressed,

---

[7]     Tr. 25-27.

[8]     Tr. 29.

[9]     Petitioner's Brief, at 3.  *See* Tr. at 24-25.

[10]    Tarver states that he was tested for an STD at a KBR clinic on September 4, 2005. He further states that the testing in September 2005 yielded negative results for HIV and hepatitis.  His medical records (CX-10) contain no evidence of testing or results at that time.  Tarver argues that SEII has withheld the test results from the case record. Petitioner's Brief, at 3.  However, they apparently were considered by the ALJ upon Tarver's motion for reconsideration.  *See* ALJ's Order Denying Motion for Reconsideration and Affirming Decision and Order, dated Nov. 29, 2007 (Exhibit B to Defendant's Brief) ("Reconsideration Order"), at 2-3.

[11]    Petitioner's Brief, at 3.  *See* Tr. at 21-23.

depressed, sad and [could not] sleep."[12]

On December 19, 2005, Tarver was instructed by KBR to take a physical screening for a Kuwait visa, and Tarver gave blood for testing. The blood test was positive for the hepatitis C virus. In January 2006, KBR informed Tarver of the result.[13]

Tarver claims that he also injured his right knee during his employment. On January 20, 2006, Tarver was traveling by plane from Kuwait to the United States for a two-week stay at home. He states that, as he walked to the restroom during flight, the airplane hit turbulence and he strained his right knee. Hoping that the strain would resolve itself, he did not report the incident. On February 5, 2006, on his return flight to Iraq, Tarver states that he strained his right knee while stepping sideways to get out of his seat, but again did not report the incident. On February 6, 2006, Tarver states that he was in Dubai and that his right knee "popped" while he was packing his footlocker.[14] Tarver testified that, at the time, he did not report the injuries to his employer or to anyone on the airplane.[15] Although he saw Dr. Radoff during his stay

---

[12] Petitioner's Brief, at 3.

[13] Tr. 50-51.

[14] Petitioner's Brief, at 4; Tr. 52-57.

[15] Tr. 52-57.

in the United States, Tarver also did not report the injury to his doctor.[16]

Tarver claims that on February 9, 2006, when the pain and swelling in his right knee had not improved, he reported the injury to the KBR medical clinic in Iraq and to his supervisor.[17]  As proof of his clinic visit on February 9, he relies upon a form entitled Employer's First Report of Injury or Occupational Illness, which is dated February 20, 2006.[18]  In a box asking for a description of the accident, the form reads,

> On 02-09-06 this employee presented to the clinic to report pain to his right knee resulting from a strain getting out of his seat on a R&R flight back to the US. . . . [19]

Defendants maintain that  Tarver was not seen in the clinic on February 9 and that the form, which relied wholly on Tarver's self-reporting, is not evidence of an appointment.  The ALJ stated in his opinion that no evidence of a February 9 appointment is in the record.[20]

Tarver last worked for SEII on February 18, 2006.[21]  Shortly thereafter, he

---

[16]    Tr. 52-54.

[17]    *See*, *e.g.*, Petitioner's Brief, at 9, 15; Petitioner's Reply, at 2, 8.

[18]    CX-7, § 39.

[19]    *Id*., § 26.

[20]    ALJ Decision and Order Denying Benefits, dated Sept. 12, 2007 (Exhibit A to Defendants' Brief) ("ALJ Decision"), at 4.

[21]    *Id*.

returned to the United States.

Tarver states that he went back to Dr. Radoff on February 21, 2006, but did not let him treat Tarver's right knee because Dr. Radoff is not an orthopaedic doctor. He further states that he then was denied treatment for his knee until he saw Dr. Siller on March 8, 2006.[22]   On March 27, 2006, Tarver had surgery on his right knee; he concluded rehabilitation of the knee in May 2006.[23]

### B.   Administrative Hearing

Tarver had a hearing before an ALJ on June 6, 2007.[24]   At his hearing, he testified that he had tried intravenous drugs in 1978.[25]   The ALJ heard the testimony of medical expert Patricia Rosen, M.D., a toxicologist and internist, who testified that there are no reported instances of hepatitis C transmission through intact or cut skin, but rather that transmission occurs through injection of the virus into the body.[26]   She further testified that hepatitis C is most commonly transmitted through intravenous drug use, sexual contact, blood transfusions before the 1990s, and accidental

---

[22]      Petitioner's Brief, at 4; Tr. 52.

[23]      EX-13, at 32; Tr. 57-58.

[24]      Tarver was represented by counsel Gary Pitts before the ALJ.

[25]      Tr. 17.

[26]      Tr. 77-78.

occupational contact with used needles by medical professionals.[27]  She concluded that Tarver's intravenous drug use in 1978 was the most likely source of his infection and stated that it is not uncommon to be asymptomatic for twenty or thirty years after contracting the disease.[28]

As for Tarver's hypertension, Dr. Rosen testified that Tarver's blood pressure reading of 164/90 at his pre-deployment examination would be consistent with hypertension, which she characterized as a hereditary disorder that can be exacerbated by diet and lack of exercise.[29]  She also testified that "stress in itself does not cause a worsening of any illness, including hypertension."[30]

Mark Moeller, M.D., conducted a psychiatric evaluation of Tarver and testified that Tarver did not meet the DSM-IV criteria for PTSD, major depression, or any other disorder, although he did display some paranoia.[31]  He also described Tarver as a "symptom magnifier."[32]  He stated that Tarver's complaints of depression and inability to concentrate could just as likely be caused by side effects of his

---

[27]    Tr. 67-68.

[28]    Tr. 70.

[29]    Tr. 81.

[30]    Tr. 82.

[31]    Tr. 87-90.

[32]    Tr. 91.

medications for hepatitis C.[33]  Moeller opined that Tarver did not have a psychiatric condition that would prevent him from working.[34]

The vocational expert, William Quintanilla, testified that even taking Tarver's physical impairments into account, Tarver could continue work as bus driver.[35]

## C.    The ALJ's Decision

On September 12, 2007, the ALJ denied benefits to Tarver on causation grounds, holding that Tarver had failed to show that his impairments arose out of his employment.  The ALJ also held that Tarver had not established a compensable injury.[36]

Regarding Tarver's claim that his right knee injury was caused while in flight and carrying luggage, the ALJ found that the knee injury could have been caused in the manner claimed, and noted the medical evidence of injury.  However, he did not credit Tarver's testimony as to how the injury happened "due to his failure to report

---

[33]    Tr. 93.

[34]    Tr. 88.

[35]    Tr. 100-102.

[36]    ALJ Decision, at 8-10 (citing, *inter alia*, *Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*, 227 F.3d 285, 287-88 (5th Cir. 2000)).

the condition until several weeks later despite the presen[ce] of intense pain."[37]  He

relied on the fact that Tarver had seen Dr. Radoff on January 23, 2006, and February

21, 2006, but that Tarver had not mentioned his knee problems during those

appointments and Dr. Radoff's physical examinations revealed no abnormality in the

knee.[38]  He concluded that Tarver's injury occurred between February 18, 2006 (when

his employment with SEII ended) and March 8, 2006, when he sought treatment from

Dr. Siller.[39]  Because the injury occurred after employment ended, causation was not

shown.

As for Tarver's hepatitis C condition, the ALJ found that the condition pre-

existed Tarver's employment with SEII and therefore was not caused by work

conditions.  He credited the testimony of Dr. Rosen, who testified that the most likely

explanation for Tarver's condition was his past intravenous drug use.[40]  He further

relied on Dr. Rosen's testimony that hepatitis C is not transmitted through a cut on the

---

[37]   ALJ Decision, at 9.

[38]   *See* EX-13, at 16-19, 24-25 (medical records); Tr. 52-55.

[39]   The ALJ further stated that there was no record of Tarver being seen in a KBR Clinic on February 9, 2006, and no record of treatment until Tarver's appointment with Dr. Siller on March 8. ALJ Decision, at 4.

[40]   ALJ Decision, at 10.  *See* Tr. 65-70.

skin, as theorized by Tarver.[41]

As for hypertension, the ALJ found that Tarver's condition preexisted his employment,[42] as evidenced by Tarver's pre-deployment examination.  He credited Dr. Rosen's testimony that the condition was hereditary and not work related.[43]

Finally, as to Tarver's depression, stress, and other disorders, the ALJ found that such conditions were related to his treatment for hepatitis C, and furthermore credited Dr. Moeller's testimony that the conditions did not interfere with Tarver's ability to work.[44]

On October 10, 2007, Tarver timely filed a motion for reconsideration with the ALJ.  He submitted several additional documents in support of his positions regarding his hypertension and hepatitis C, asserting that the documents had been intentionally omitted from the record by Defendants.   The ALJ considered all of the newly submitted documents and concluded that none were material so as to justify reconsideration of the previous order.[45]

---

[41]    Tr. 77-80.

[42]    ALJ Decision, at 10.

[43]    *Id.*; *see* Tr. 81.

[44]    ALJ Decision, at 10.  *See* Tr. 94.

[45]    Reconsideration Order, at 2-3.  Tarver had submitted a urinalysis report dated June
(continued...)

Subsequently, Tarver filed with the ALJ a request for modification, seeking reversal of the decision denying benefits.  In support, he submitted additional documents.  He alleged that the ALJ had made mistakes of fact regarding his knee injury and his hepatitis C condition, and further alleged that Defendants' counsel had withheld, omitted, or destroyed pertinent evidence.  The ALJ considered Tarver's arguments and Defendants' response, and held a telephone conference with both parties.  He concluded that, although Tarver alleged mistakes of fact and a change in condition, in essence he was reiterating his previous arguments and seeking a *de novo* review of the issues decided in the ALJ's initial decision.[46]  After reviewing the evidence and considering the parties' arguments, he found no reason to reverse his

---

[45]     (...continued)
24, 2006, but the ALJ noted that the report did not contain any results relevant to hepatitis C or hypertension.  *Id.* at 2-3.  Tarver also submitted an email from February 2006 that indicated that he was being sent home on approved medical leave.  *See* CX-6.  The ALJ stated, however, that the email did not state why he was approved for medical leave and did not indicate the medical condition that prompted the leave.  Reconsideration Order, at 3.  Similarly, a medical treatment request form submitted by Tarver did not provide support for his claims, and did not establish that Tarver's medical problems were caused by incidents during his employment with SEII.  *Id.*

[46]     Decision and Order on Modification, dated July 31, 2008 (Exhibit C to Defendant's Brief) ("Modification Order").  Tarver argued to the ALJ that he had been seen in the KBR Clinic on February 9, 2006, for knee pain, citing the form entitled  Employer's First Report of Injury or Occupational Illness.  *See* CX-7, § 26.  The Defendants argued, and the ALJ agreed, that the document relied upon by Tarver was based wholly on information supplied by Tarver, and was not supported by any clinic records regarding the alleged appointment.  The ALJ also noted that Tarver's appointment records from Dr. Radoff on January 23 and February 21, 2006, did not contain any mention of knee problems.

previous decisions, and denied modification.

### D.   BRB Decision

Tarver appealed the ALJ's decision to the Benefits Review Board ("BRB"), arguing that the ALJ erred in denying benefits and that Defendants had withheld relevant documents that would establish a causal connection between his medical impairments and his employment with SEII.  The BRB held that "all of the documents which [Tarver] requests that the [BRB] compel [SEII] to produce are either not material to the issues involved in this case, have already been submitted into evidence, or simply do not exist."[47]  Upon reviewing the ALJ's decision to deny benefits, the BRB held that the findings were supported by substantial evidence, were rational, and were in accordance with the law.  The BRB therefore affirmed the ALJ's decision. Tarver's timely motion for reconsideration was denied.[48]

### E.   Federal Court Review

Tarver filed a petition for review with the Fifth Circuit Court of Appeals on August 13, 2010.[49]  On March 14, 2011, the Court of Appeals granted Defendants'

---

[47]   BRB Decision dated March 30, 2010 (Exhibit D to Defendant's Brief), at 4.

[48]   BRB Order on Motion for Reconsideration, dated June 25, 2010 (Exhibit E to Defendant's Brief).

[49]   Doc. # 1.

motion to transfer the petition for review to this Court.[50]

## II.    STANDARD OF REVIEW

The BRB is required by the Longshore and Harbor Workers' Compensation Act ("LHWCA") to "accept the findings of the ALJ 'unless they are not supported by substantial evidence in the record considered as a whole or unless they are irrational.'"[51] The BRB does not have statutory authority to engage in *de novo* review of the evidence or to substitute its views for those of the ALJ.[52]

This Court's review of the BRB's decision "is limited in scope to considering errors of law and making certain that the BRB adhered to its statutory standard of review of factual determinations, that is, whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law."[53]   This Court may not reweigh or reappraise the evidence, nor may it substitute its judgment for that of

---

[50]    Doc. # 17.  Defendants' motion before the Fifth Circuit argued that the Fifth Circuit lacked jurisdiction until the United States District Court issued a final ruling on Tarver's appeal.  *See* Doc. # 12, at 6-7 (citing 42 U.S.C. § 1653(b); *AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111 (5th Cir. 1991)).

[51]    *Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*, 227 F.3d 285, 287 (5th Cir. 2000) (quoting *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944 (5th Cir. 1991)).

[52]    *Id.*

[53]    *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003) (internal quotation marks, alteration, and citation omitted).

the ALJ.[54]

## III.   ANALYSIS

Under the LHWCA, a claimant is entitled to a presumption of causal relation if he proves (1) that he suffered harm and (2) that conditions existed at work, or an accident occurred at work, that could have caused, aggravated, or accelerated the condition.[55] Once the *prima facie* case is established and the presumption is invoked, the employer can rebut the presumption by showing "substantial evidence to the contrary," including evidence of the absence of a connection between the injury and the employment.[56] If the presumption is rebutted, the issue of causation must be decided by looking at all of the evidence in the record.[57]

The ALJ denied Tarver's application for benefits on the ground that he had failed to establish a compensable injury and had failed to show that his impairments were causally related to his employment.[58] The BRB affirmed the ALJ's determination, holding that Tarver had failed to establish that his impairments were

---

[54]    *Hunter*, 227 F.3d at 287.

[55]    *Charpentier*, 332 F.3d at 287; *Hunter*, 227 F.3d at 287.

[56]    *Hunter*, 227 F.3d at 288.

[57]    *Id.*

[58]    ALJ Decision, at 8-10.

caused or aggravated by his employment.[59]

## A.   Knee Injury

The ALJ denied benefits for Tarver's knee injury based on his finding that the injury occurred after Tarver's employment ended on February 18, 2006.  He found Tarver's testimony not credible that Tarver had injured his knee on three occasions in January and February 2006, and had failed to report the injuries at doctor's appointments on January 23, 2006, and February 21, 2006.

Tarver argues that his knee injuries occurred during his employment and that he reported the injuries to his employer.[60]  He asserts that the ALJ erred in finding that Tarver did not report his knee injury until March 8, 2006.  As stated above, Tarver cites to the form entitled Employer's First Report of Injury or Occupational Illness, which states "On 2-9-06 this employee presented to the clinic to report pain to his right knee resulting from a strain getting out of his seat on a R&R flight back to the US."[61]  The report is dated February 20, 2006.[62]  He further cites to an email from February 2006 with the subject line "FW: Tarver, Franklyn – Medical leave –

---

[59]     BRB Decision, at 5-7.

[60]     Tarver's briefing states he seeks benefits through the present day.  However, his rehabilitation for the knee was complete in May 2006.  Tr. 57-58.

[61]     Employer's First Report of Injury or Occupational Illness (CX-7) at 1, § 26.

[62]     *Id.* § 39.

SAP#331364," which forwards a flight itinerary from Kuwait to Houston on February 18, 2006.[63]

The ALJ carefully considered both of these documents, which Tarver submitted after the ALJ's initial decision.  In his reconsideration request, Tarver submitted the email which contained "medical leave" in the email subject line.  The ALJ decided, however, that the email did not justify a change in his decision because it did not state why Tarver was approved for medical leave and did not indicate the medical condition that prompted the leave.[64]  In Tarver's subsequent request for modification of the ALJ's decision, he cited to the Employer's First Report of Injury, which states that Tarver reported his knee injury on February 9, 2006.  The ALJ noted that the information on the form had been supplied by Tarver and was not supported by any clinic records regarding a February 9 appointment.[65]

Tarver also cites to his testimony at his administrative hearing that he injured his knee three times before his employment ended.  In particular, Tarver testified before the ALJ that he left Kuwait in January 2006 to spend two weeks in the United States on leave, and that he injured his right knee on the flight to the United States,

---

[63]     Email from D. DiValentone to R. Short, dated Feb. 18, 2006 (CX-6).

[64]     Reconsideration Order, at 3.

[65]     Modification Order, at 2.

again on the return flight to Kuwait, and a third time as he was getting his baggage at the Dubai airport.[66]  The ALJ in his ruling explained that he had considered this live testimony in reaching his decision but found it wanting.[67]  Indeed, this finding is supported by Tarver's testimony at the same hearing that he did not report any of the three injuries to his employer at the time of injuries.[68]  He further conceded that, although he saw Dr. Radoff on January 23, 2006, during his two-week leave in the United States, he did not report any knee injury at that appointment,[69] nor at his follow up appointment with Dr. Radoff on February 21, 2006.[70] Not until March 8, 2006, did Tarver see any doctor for his knee injury.

The ALJ's determination is supported by substantial evidence.

### B.    Hepatitis C

The ALJ concluded that there was no competent evidence that Tarver's hepatitis

---

[66]    Tr. 51-57.

[67]    ALJ Decision, at 9-10.

[68]    Tr. 54, 55, 56-57.  Tarver argues before this Court that, when testifying before the ALJ, he was stating that he did not report the injury on February 6, 2006, but that the injury was reported at the medical clinic on February 9.  As stated above, however, the ALJ heard and considered Tarver's contention that he received treatment for his knee on February 9, and found no evidence supporting the claim.

[69]    Tr. 54.  *See* EX-13, at 16-19 (Radoff conducted full body examination).  Tarver testified before the ALJ that he did not mention the knee injury because Dr. Radoff was not an orthopedic doctor.  Tr. 52, 54.

[70]    EX-13, at 24-25.

C was caused by his work for SEII, and the BRB affirmed the decision.  The ALJ's determination was supported by the testimony of Dr. Rosen, and further supported by his finding that Tarver's testimony lacked credibility.

Tarver's arguments in this Court reiterate those made in the proceedings below. He continues to argue that Defendants omitted or destroyed evidence showing that he did not have hepatitis C in September 2005.  In support, however, he cites only to his medical records, apparently to demonstrate that they lack any record from September 2005.  These medical records were, of course, before the ALJ.  Moreover, on reconsideration, the ALJ considered Tarver's argument that a medical treatment request form from September 4, 2005, supported Tarver's position regarding causation, and held that the document provided no such support.[71]  The BRB affirmed the holding.[72]

Tarver also argues that the ALJ erred when he found that Tarver had hepatitis C before he was hired, based on the absence of pre-deployment medical records establishing the condition.  He disagrees with the ALJ, and with Dr. Rosen, that the mostly likely source of his hepatitis C condition was his past intravenous drug use.

---

[71]     Reconsideration Order, at 3 ("The medical treatment request form dated September 4, 2005 also does not establish that Claimant suffered a knee injury or developed hepatitis or high blood pressure during his employment with Employer.").  The treatment request form pertained to evaluation for a possible STD.  *Id*. at 2.

[72]     BRB Decision, at 4.

Tarver's argument is misplaced.  The ALJ did not rely on any medical records establishing that Tarver had contracted hepatitis C prior to his deployment.  Rather, the ALJ relied upon Tarver's failure to show that his hepatitis C was caused by a work accident or work condition while Tarver was employed by SEII.  This finding was supported by Dr. Rosen's testimony and by the ALJ's findings regarding Tarver's credibility.  The fact that SEII "admitted" that Tarver was not tested for hepatitis C in his pre-deployment physical, even though his blood was drawn at the physical, does not establish that Tarver was negative for hepatitis C at that time.[73]  The ALJ's determination that Tarver did not make out a *prima facie* case of causation is supported by substantial evidence.

C.    **Depression and Stress**

The ALJ concluded that Tarver did not have any mental disorder that was

---

[73]    Tarver also argues that Defendants waived their right to dispute Tarver's hepatitis C condition because they did not list hepatitis C as an injury on Department of Labor Form LS-207.  Petitioner's Brief, at 10 (citing CX-14); Petitioner's Reply, at 2 (citing same).  Tarver cites no authority supporting his argument regarding waiver, and the Court is aware of none.  Indeed, Tarver bore the burden to establish a *prima facie* case of injury in his administrative proceedings.  *Charpentier*, 332 F.3d at 287.  Moreover, Tarver had ample opportunity in the administrative proceedings to counter Defendants' arguments regarding hepatitis C.  At his administrative hearing, Tarver testified regarding hepatitis C and his theories of how he contracted the disease, and Dr. Rosen also testified at length regarding the condition.  Dr. Rosen was cross-examined by Tarver's counsel.  In five separate written opinions, *see* Exhibits A-E to Defendants' Brief, the ALJ and the BRB thoroughly considered Tarver's arguments regarding hepatitis C.

.

related to his employment with SEII, but rather that his stress or mental or emotional issues were attributable to his diagnosis of and treatment for hepatitis C.  The ALJ's opinion was supported by the testimony of Dr. Moeller, who stated that Tarver had no mental illness that would interfere with his  ability to work.

Tarver disagrees with the ALJ regarding the cause of his depression and stress, asserting that in fact it arose from the stress caused when he found blood in his bed. He also asserts that the ALJ erred when finding that his depression was caused by his hepatitis C treatment.

Tarver presents no evidence supporting a finding that the ALJ or the BRB erred as a matter of law or applied the wrong standard of review.  Nor has Tarver shown that the ALJ's decision was not based on substantial evidence, particularly given the ALJ's findings based on personal observation at the hearing that Tarver's testimony lacked credibility.

### D.   **Hypertension**

Tarver alleges that his hypertension was related to his employment with SEII. The ALJ denied benefits, holding that no causation was shown, and relying upon medical records showing significantly elevated blood pressure before Tarver's deployment.[74]  Tarver makes various arguments before this Court, including that

---

[74]   Pre-Deployment Physical, Jan. 4, 2005 (CX-3, at 6) (showing blood pressure reading
(continued...)

Defendants have withheld records showing normal blood pressure readings in April 2005.[75]   The ALJ thoroughly considered Tarver's arguments regarding withheld documents when deciding Tarver's motions for reconsideration and modification.[76]  The BRB also addressed and rejected Tarver's contentions that documents had been withheld.[77]   Tarver has produced no competent evidence in this Court supporting his assertion, and his argument is unavailing.

The ALJ's holding regarding Tarver's hypertension, which was based upon Tarver's pre-deployment physical examination and upon Dr. Rosen's testimony, is supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision of the Benefits Review Board denying benefits to Tarver is **AFFIRMED.**   Tarver's petition for review is **DISMISSED WITH PREJUDICE**.

A separate final judgment will issue.

---

[74]       (...continued)
of 164/90).

[75]       Petitioner's Reply, at 3.

[76]       Reconsideration Order, at 2-3; Modification Order, at 2-3.

[77]       BRB Decision, at 4-7.

SIGNED at Houston, Texas, this **30th** day of **December, 2011**.

Nancy F. Atlas
United States District Judge